**LAKE REGION HOSPITAL CORPORATION, a Minnesota non-profit corporation, Provider No. 24–0052, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.***

**Civ. No. 6–82–1052.**

United States District Court, D. Minnesota, Third Division.

Dec. 30, 1983.

---

* The court substitutes Margaret M. Heckler, Secretary of Health and Human Services as the real

Richard L. Pemberton, Rufer, Hefte, Pemberton, Schultze, Sorlie, Sefkow & Kershner, Fergus Falls, Minn., for plaintiff.

James M. Rosenbaum, U.S. Atty. by Mary L. Egan, Asst. U.S. Atty., Minneapolis, Minn., Eve C. Epstein, Asst. Regional Atty., U.S. Dept. of Health & Human Services, for defendant.

### MEMORANDUM & ORDER

DEVITT, District Judge.

This is an action for judicial review of a final decision of the Secretary of Health and Human Services ("Secretary") denying reimbursement of certain costs under the Medicare Act.[1]  42 U.S.C. § 1395 *et seq.* The parties have filed cross motions for summary judgment.  For reasons discussed below, the Secretary's decision is affirmed and summary judgment is granted in favor of defendant.

*Background*

This case stems from plaintiff hospital's practice of charging area clinics less for laboratory and radiology services rendered to clinic patients than it charges its own patients.  The dispute concerns the Secretary's methodology of apportioning the costs of health care services between Medicare and non-Medicare patients to determine the amount of cost reimbursement due plaintiff for its fiscal years ending September 30, 1978 and September 30, 1979.  The hospital seeks additional reimbursement on the grounds that the Secretary improperly increased ("grossed up") the laboratory and radiology charges contained in its cost reports.  It claims the Secretary distorted the cost apportionment process in violation of the Medicare Act and regulations which require that charges for services be related to the cost of providing those services.  Accordingly, plaintiff contends that it is entitled to use a hybrid grossing up method, or in the alternative, to use the revenue offset method in its cost reporting.  An overview of the Medicare Act and applicable statutory provisions is needed to properly assess the issues before the court.

*The Medicare Act*

The Medicare Act, enacted in 1965 to provide medical benefits to the elderly and disabled, includes a program of hospital insurance benefits for eligible recipients. 42 U.S.C. §§ 1395c–1395i (Part A 1976 & Supp. II 1978).  A hospital participating in the program as a "provider of services" is entitled to reimbursement of the costs of hospital services it renders to Medicare beneficiaries.  42 U.S.C. §§ 1395f(b), 1395x(u).

Reimbursement is based on the lesser of the provider's "reasonable cost" incurred

---

party in interest in place of all other individuals named by plaintiff as defendants.  Fed.R.Civ.P. 25(d)(1); 42 C.F.R. § 405.1877 (1982).

1. Health Insurance for the Aged Act, Pub.L. No. 89–87, tit. I, 79 Stat. 286 (1965) (codified in sections of titles 26, 42 and 45 U.S.C.).

or its "customary charges" for the services. 42 U.S.C. § 1395f(b). The "reasonable cost" of any service is the direct and indirect cost actually incurred, and is determined according to regulations promulgated by the Secretary. 42 U.S.C. § 1395x(v)(1)(A). "Customary charges" are not at issue in this case.

Providers may be reimbursed directly from the Secretary but more commonly seek reimbursement from organizations under contract with the Secretary to act as "fiscal intermediaries," 42 U.S.C. § 1395h, by filing with the intermediary a fiscal year-end cost report. 42 C.F.R. § 405.-406(b). The intermediary reviews and if necessary audits the report to determine the reasonable cost of reimbursable services. *Id.* A provider that is dissatisfied with its intermediary's determination may obtain a hearing before the Secretary's Provider Reimbursement Review Board (the "Board"). 42 U.S.C. § 1395oo (a). The Board's ruling becomes the agency's final decision unless the Secretary on her own motion and within sixty days, reverses, affirms or modifies the ruling. 42 U.S.C. § 1395oo (f)(1). The provider may then seek judicial review of a final adverse agency decision according to the applicable provisions of the Administrative Procedure Act. *Id.*; 5 U.S.C. § 701–706 (1976).

The regulations governing provider reimbursement are codified at 42 C.F.R. § 405.-401–405.488 (1979). They establish a two step process for determining reimbursement: 1) cost finding, which involves identification of health care services covered by the Medicare Act and a determination of the associated costs ("allowable costs") of rendering those services; and 2) cost apportionment, which requires allocation of the allowable costs between Medicare and non-Medicare patients. 42 U.S.C. § 1395f(b); 42 C.F.R. § 405.401 *et seq.* (1979). *See Research Medical Center v. Schweiker,* 684 F.2d 599, 602 (8th Cir.1982).

The cost apportionment formula applicable to plaintiff for the fiscal years at issue, 1978 and 1979, is the "Departmental Method" which requires that each department determine its reimbursable costs. 42 C.F.R. §§ 405.404(b), 404.452(c)(2). A provider's total Medicare reimbursement is the sum of the reimbursable department costs. Because of the difficulty in accurately determining the costs of Medicare beneficiary services from a department's total costs of providing services, they are derived by a ratio of beneficiary charges to the department's total charges for the services. "Charges" are the regular rates billed for the services. *Id.* Roughly, apportionment for a department is accomplished as follows:

$$\frac{\text{Cost of Medicare Beneficiary Services (reimbursable costs)}}{} = \frac{\text{Charges to Beneficiaries}}{\text{Total Charges}} \times \text{Total Costs}$$

42 C.F.R. § 405.452. Although a provider may sell its services at a discount, the regulations require that charges are reported at their pre-discount rates for Medicare apportionment purposes because the charge figure affects the amount of cost reimbursement. Although the regulations allow a provider to use a more sophisticated method of cost allocation, 42 C.F.R. § 405.453(ii), the burden of proof lies with the provider. *See Doctors Hospital, Inc. v. Califano,* 459 F.Supp. 201, 215 (D.D.C. 1978).

*Facts/Claims of the Parties*

Plaintiff is a Minnesota nonprofit corporation that operates a general short term acute care hospital and a skilled nursing facility in Fergus Falls, Minnesota. It is a "provider of services" under the Medicare Act. See 42 U.S.C. § 1395x(u). The hospital includes a laboratory and a radiology department which it operates 24 hours a day. Because much of the departments' equipment and personnel are underutilized, the hospital provides laboratory and x-ray services to area clinics in order to reduce

the cost of operating the departments. Hearing Transcript 393–94 ("Tr."). The hospital sells its technical pathology services to Orandi Medical, P.A. and its technical radiology services to Fergus Falls Medical Group. Tr. 439, 441. It charges the clinics for the laboratory and x-ray work rather than the clinic patients ("non-provider" patients). The hospital pathologists or radiologists do not interpret the clinic tests, however, nor does the hospital charge the clinics for such services. The clinics have independent billing arrangements with the hospital pathologists and radiologists when nonprovider patients seek their professional interpretive services. Tr. 404.

The hospital charges the area clinics less for laboratory and radiology services rendered to clinic patients than it charges hospital patients for the services. It contends the dual pricing structure is justified on a cost basis because the services rendered to nonprovider patients are far less extensive than those provided hospital patients. The parties agree that the actual laboratory tests and x-rays, without considering pretest and post-test procedures, involve the same costs for hospital and clinic patients.

The hospital asserts that in order to remain competitive it must keep its clinic charges low, and that it is entitled to report the lesser clinic charges for Medicare reimbursement purposes or that it must increase the clinic charges on its cost report only to the extent that the charges bear the same percentage markup over the underlying costs as hospital patient charges bear to the costs of providing hospital patient services. Based on its claim that the costs differ, the hospital contends the Medicare regulations do not authorize it to gross up the clinic charges to equal the same dollar rates charged to hospital patient patients for laboratory and x-ray services. *See* 42 C.F.R. § 405.452(d)(4) (requires that charges for services "be related to the cost of the services.").

The hospital commissioned a pricing study for fiscal year 1978 to document and quantify the alleged cost differences. It claims the study supports its position that the lower clinic charges are not discounts but properly reflect the lesser costs involved in rendering outside laboratory and radiology services. For example, the hospital contends that a great deal of personnel time is spent preparing hospital patients for tests and collecting laboratory specimens, transporting patients for x-rays and processing and billing hospital patients. These procedures are either absent or simplified in the case of clinic patients: the clinic provides the laboratory specimen, no transportation is provided by the hospital to clinic patients, and billing of the clinics for the nonprovider services involves little time or expense. Additionally, plaintiff asserts that care to hospital in-patients is particularly costly because they are usually less healthy than hospital out-patients or clinic patients and cannot appreciably assist hospital staff regarding the laboratory or radiology procedures. While the hospital does not seek to distinguish its costs for rendering the services to in-patients from out-patients for cost reimbursement purposes, it does argue that services rendered to hospital patients as a class are different services for pricing purposes than the services rendered to clinic patients.

Plaintiff's fiscal intermediary, Blue Cross Association through Blue Cross-Blue Shield of Minnesota, rejected the study and adjusted the hospital's 1978 and 1979 cost reports to reflect uniform charges for laboratory and radiology services because:

1) plaintiff failed to demonstrate a real difference in the cost of a given service when rendered to a hospital patient as opposed to a clinic patient; and

2) irrespective of any cost difference associated with providing the services, Medicare law and program policy require the use of uniform charges in the cost apportionment determination.

*See* Tr. 12, 742. The cost report adjustments were accomplished by increasing or "grossing up" plaintiff's reported clinic charges to the same rate charged to hospital patients. Thus, Blue Cross increased the outside charges for technical laboratory and x-ray services and added a charge for

professional services.[2] As a result, the denominator of the charge ratio used in the cost apportionment formula,

$$\text{Medicare Costs} = \frac{\text{Charges to Beneficiaries}}{\text{Total Charges}} \times \text{Total Costs,}$$

was increased which thereby decreased the fraction of the total costs reimbursable under the Medicare Act by approximately $81,000 for 1978 and $40,000 for 1979.

Plaintiff appealed the 1978 and 1979 adjustments to the Provider Reimbursement Review Board which held a consolidated hearing on March 23 and 24, 1982. The Board issued its decision on June 16, 1982 affirming the intermediary's adjustments for the fiscal year ending 1978, and implicitly affirmed the intermediary's 1979 adjustments. *See* Tr. 574–75. It held that plaintiff's study failed to substantiate a cost difference between services provided to hospital and clinic patients since 1) the study may contain an error rate of as much as 25 percent, and 2) significant portions of the study were not capable of verification as required by the regulations. Tr. 14. Accordingly, it held that plaintiff failed to satisfy its burden of proof—to show why the Secretary's methodology of uniform charges, as opposed to the hospital's hybrid grossing up method, should not be followed. *Id.* Additionally, the Board refused to consider plaintiff's alternate reimbursement method because the study did not clearly support a "charging differential" nor were the study's cost computations for the services rendered to nonprovider patients accurate and verifiable. *Id.*

The Board's ruling became the Secretary's final decision on July 26, 1982. Plaintiff filed this action for judicial review on August 4, 1982. The parties have filed cross motions for summary judgment.

*Issue*

The issue before the court is whether the Secretary's decision 1) is supported by substantial evidence, 2) is in excess of statutory authority, or 3) is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2).

*Discussion*

Plaintiff has made a reasoned argument, based on its study, regarding claimed costs differences in provider and nonprovider patient services. However, the Board properly concluded that the study lacked the reliability necessary to quantify the alleged cost differences for Medicare reimbursement purposes. This court finds that the Board's determination rejecting the study is supported by substantial evidence in the record when viewed as a whole and is otherwise in accordance with law.

While the intermediary cited many reasons to reject the study, the Board was concerned at the hearing only with those underlying reasons which significantly affect the validity of the study. Of the significant problems, the Board sought to determine if the flaws could be corrected or resolved. *E.g.*, Tr. 320–35, 330–42. The intermediary's expert, Blue Cross Senior Auditor Norris Waalen, a certified public accountant, identified only two significant problems but testified that the problems could not be overcome such that the study could be used to reasonably estimate departmental cost differences.

The study's cost data was derived from the statistical data gathered annually by the hospital with some modification. Tr. 677. Data for the laboratory department was modified for the study to distinguish laboratory tests by the type of patient (hospital in-patient, out-patient or clinic patient) and the frequency of tests and related procedures was estimated by laboratory personnel. (The annual statistical data included tallies only on a chargeable test by test basis even though one chargeable test may involve two or more tests in addition to other procedures). A "workload unit" was assigned to each test procedure according to values established by the College of American Pathologists ("CAP" values) in

---

**2.** Board members expressed repeated concern that addition of a professional service charge was improper. The parties, however, agree that the Secretary's cost adjustments are properly calculated according to the regulations. Tr. 308.

order to account for the effort and supplies needed to complete each procedure.

Regarding the radiology department, statistical data concerning the type of patient and the number of test procedures were already documented by the hospital, and a relative value system for determining the effort and supplies expended was also in use. Tr. 677–78, 755–57.

Auditor Waalen testified that the cost data relating to the laboratory department could not be audited or verified, as required by the regulations, since the frequency of tests and procedures was estimated without documentation rather than tallied by actual counts. *E.g.,* Tr. 324–25. Aside from the inability to check these approximate values, the estimates formed the basis of the CAP workload values which, in turn, were central to the cost determination. Thus, the intermediary could not verify whether the hospital properly allocated the costs between the provider and non-provider laboratory work. Tr. 321–25, 332.

According to Waalen, the radiology cost data was irretrievably skewed because the relative value units used in determining the x-ray technicians' salaries, a large component of the departments' costs (Tr. 763), were distributed only between the amount of time required to take x-rays of hospital patients versus the time involved with clinic patients. He testified that, in addition to the time spent handling patients, there should also have been consideration of the time spent on non-patient work. Waalen said he was unable to estimate the cost distortion but that it could be substantial. Tr. 341.

Plaintiff contends that the intermediary's criticisms are unfounded and are only a diversion for its real reason for rejecting the study: that uniform charges are required under the Medicare Act.[3] Tr. 39. The hospital claims that the intermediary's objections have been soundly rebutted by its hospital management engineer, Everett Janssen, who designed and supervised the study. Tr. 51–56.

In response to Janssen's rebuttal testimony, Waalen further explained his objections and reasserted his professional opinion, as an auditor and certified public accountant, that the study is not auditable and its flaws cannot be corrected for Medicare reimbursement purposes. Tr. 128–35.

The regulations require that a provider's cost data "must be based on financial and statistical records which must be capable of verification by qualified auditors . . . ." 42 C.F.R. § 405.453(a). Based on the conflicting testimony in the record, this court finds that the Board's reliance on Waalen's testimony rather than Janssen's, who is not an auditor or certified public accountant, is reasonable and is supported by substantial evidence. "Substantial evidence" in this context means that the evidence as a whole is adequate to support the conclusion drawn. *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 619–20, 86 S.Ct. 1018, 1026–27, 16 L.Ed.2d 131 (1966). Additionally, the court defers to the Board's expertise in reviewing and weighing the technical evidence before it. Each Board member is knowledgeable in the field of cost reimbursement and at least one member is a certified public accountant. 42 U.S.C. § 1395oo (h).

Plaintiff's claims in this case rest wholly on its study. Tr. 191, 255–57, 565, 568. Accordingly, because the Secretary has appropriately rejected the study, plaintiff has failed to sustain its burden of proving the impropriety of the Secretary's apportionment method of requiring uniform charges as it is applied to the hospital's laboratory and radiology departments.

We need not address plaintiff's alternate claim that its cost reimbursement should be determined according to the "revenue offset" method. This method is applicable, if at all, only when costs are shown to approximate revenues. Tr. 200, 292–93. Due

---

**3.** The Board was not impressed with the intermediary's view that the Medicare Act requires a uniform charge structure regardless of the study's validity. Rather, a Board member noted that the underlying purpose of Medicare cost reimbursement is that the program pay for the cost of services rendered to Medicare beneficiaries. Tr. 318, 326–30.

to the study's unacceptability, there is no evidence in the record to suggest that plaintiff's laboratory and radiology costs associated with clinic patient services approximate its revenues from such services.

*Conclusion*

The Secretary's "departmental method" appears to reasonably advance the purposes of the Medicare Act, and there is nothing inherently arbitrary or capricious in the Secretary's decision. The agency's ruling is not in excess of statutory authority, and is supported by substantial evidence. The ruling must be upheld. *See, e.g., Research Medical Center v. Schweiker,* 684 F.2d 599, 606 (8th Cir.1982).

Therefore, based on the court's *de novo* review, and all files, records and proceedings herein,

IT IS ORDERED that the Secretary's motion for summary judgment is GRANTED and plaintiff's motion for summary judgment is DENIED.